OPINION
{¶ 1} Appellants, Audney Combs, individually and as Administrator of the Estate of Tanita Combs and Frances Combs, appeal from the Franklin County Court of Common Pleas' October 6, 2005 judgment entry granting Owners Insurance Company's ("Owners") motion for summary judgment and from the court's July 20, 2005 judgment entry granting Erie Insurance Company's ("Erie") motion for summary judgment. For the following reasons, we affirm the trial court's judgments.
 {¶ 2} On February 27, 2001, the car occupied by Frances Combs and her daughter, Tanita Combs, was struck by a dump truck owned by Anthony Hucle and Hucle Concrete Construction Company ("Hucle"), and driven by Wayne Black ("Black"), a Hucle employee. Frances Combs suffered personal injuries, and Tanita Combs suffered fatal injuries as a result of the accident.
 {¶ 3} Hucle is a concrete supplier and contractor. Tanner Construction, owned by R. Keith Tanner ("Tanner"), hired Hucle to do the concrete work on Tanner's projects. On the day of the accident, Hucle instructed Black to remove and rebuild a porch that Hucle had been contracted to build on a house Tanner was constructing in Timberview. Hucle ordered Black to take Hucle's dump truck so that he could return the broken up concrete from the old porch to Hucle's house. On the way to the job site, Black stopped at Ohio Ready Mix to pick up and deliver the gravel ordered by Tanner to complete the job.[1] Once he had delivered the gravel to the job site, Black left to return the dump truck with the broken up concrete to Hucle's house, retrieve his box truck and tools and then return to the job site to complete the concrete project. On his way to Hucle's house, Black struck the car driven by Frances Combs and her daughter, Tanita.
 {¶ 4} On March 5, 2002, appellants filed suit against Hucle and Black for personal injury and negligent infliction of emotional distress to Frances Combs, wrongful death in the death of Tanita Combs, and loss of consortium to Audney Combs. Appellants also filed an uninsured/underinsured motorist ("UM/UIM") claim against their insurance carrier Erie.[2]
Liability for the accident was not disputed. The case proceeded to bench trial regarding damages on October 4, 2004. The court awarded $1.6 million to Audney Combs, as Administrator of the Estate of Tanita Combs, for his wrongful death claim and $100,000 for his loss of consortium claim. Frances Combs was awarded $300,000 for negligent infliction of emotional distress and $100,000 for bodily injury.
 {¶ 5} Progressive Insurance Company ("Progressive") covered both Black and Hucle under its motor vehicle liability policy, which provided a single limit for bodily injury coverage in the amount of $100,000. Upon judgment of the trial court, Progressive tendered $100,000 to Francis Combs in partial satisfaction of her claim.
 {¶ 6} On December 3, 2004, Erie filed a motion for partial summary judgment, claiming that it was entitled to a setoff of the $100,000 paid by Progressive to Frances Combs for her bodily injury and the derivative claim of Audney Combs for loss of consortium. The trial court granted Erie's motion on July 5, 2005. Appellant now appeals this decision.
 {¶ 7} Although Tanner had been dismissed from the case,[3] appellants filed a supplemental complaint on January 31, 2005 against Tanner's insurance carrier, Owners. Appellants alleged that Black was entitled to coverage at the time of the accident under the terms of Owners' policy as issued to Tanner. More specifically, appellants argued that Black was insured because he was using a non-owned vehicle in the business of the named insured, Tanner. Owners filed a motion for summary judgment, which was granted by the trial court on September 14, 2005.[4]
 {¶ 8} Appellants assert two assignments of error:
I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE OWNERS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT.
II. THE TRIAL COURT ERRED IN DETERMINING, AS A MATTER OF LAW, THAT APPELLEE, ERIE, WAS ENTITLED TO SET OFF THE ONE HUNDRED THOUSAND DOLLARS ($100,000) PAID UNDER THE PROGRESSIVE POLICY TO PARTIALLY COMPENSATE APPELLANT, FRANCES COMBS, FOR THE DAMAGES SHE SUFFERED AS A RESULT OF THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.
 {¶ 9} Appellate review of motions for summary judgment is de novo. The moving party bears the burden of proving: (1) no genuine issues of material fact exist; (2) the moving party is entitled to summary judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Civ.R. 56. The nonmoving party must present specific facts beyond the pleadings to show genuine issues of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280.
 {¶ 10} At the heart of both assignments of error is contract interpretation. An insurance policy is a contract between the insurer and the insured. Nationwide Mut. Ins. Co. v. Marsh
(1984), 15 Ohio St.3d 107. Therefore, we must determine the intent of the parties to the contract at the time it was entered into:
An insurance policy constitutes a contract, its terms must be given a reasonable construction, and an ambiguity which is created by giving a strained or unnatural meaning to phrases or by mere casuistry does not constitute an ambiguity requiring construction.
Yeager v. Pacific Mut. Life Ins. Co. (1956), 166 Ohio St. 71, paragraph two of the syllabus. Historically, courts have looked to the language of the insurance contract to determine the intent of the parties entering into the contract. "Words and phrases used in an insurance policy must be given their natural and commonly accepted meaning." Gomolka v. State Auto. Mut. Ins.Co. (1982), 70 Ohio St.2d 166, 167-168. This rule was further upheld in U.S. Fidelity Guarantee Co. v. Lightning Rod Mut.Ins. Co. (1997), 80 Ohio St.3d 584, and King v. Nationwide Ins.Co. (1988), 35 Ohio St.3d 208.
 {¶ 11} Appellants' first assignment of error questions the trial court's determination that Black was not an insured under the clear and unambiguous language of Tanner's insurance policy. Appellants further assert that the trial court erroneously failed to consider whether the truck being used at the time of the accident was "used in the business" of Tanner. Appellants contend that only after such a determination could the trial court then consider whether Blacks' use of Hucle's truck was with Tanner's permission.
 {¶ 12} We must first consider the language of Owners' policy regarding the scope of coverage. In pertinent part, the policy states:
We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto" you do not own or which is not registered in your name, but which is used in your business.
Appellant argues the endorsement defines an insured as:
1. Any person
2. Using the auto
3. Not owned by such person
4. Provided the actual use is with your permission.
(Appellants' brief at 14.)
 {¶ 13} Appellants go to great lengths to convince us that the phrase "used in your business," is synonymous with the phrase "while performing duties related to the `Named Insured's' business," which is commonly used in insurance contracts. As such, appellants argue that the Third District Court of Appeals' decision in Zirger v. Ferkel, Seneca App. No. 13-02-05, 2002-Ohio-2822 is pertinent to this case. There, the court determined that the insurance policy language "duties related to the `Named Insured's' business" not only granted coverage to an employee acting in the course and scope of employment, but extended coverage beyond that to any actions related to such business. However, in Zirger, the Third District Court of Appeals interpreted the policy to mean that employees were covered by their employers' insurance policies.
 {¶ 14} At the time of the accident, Black was employed by Hucle, not Tanner. The record reveals that Black was using the dump truck as part of his employment with Hucle. Appellants offer no facts to show that Black was employed by Tanner.[5]
 {¶ 15} While appellants concede that Black was not an employee of Tanner, they continue to argue that Black is an insured under the language of Owners' policy because the policy expressly covers "any person," not just an employee. Therefore, appellants contend that the Third District Court of Appeals's expanded interpretation of "named insured's business" and any actions related to that business should apply to "any person" under the language of Owners' policy. Still, we decline to apply or adopt the scope of coverage as interpreted by the court inZirger, as it is inapposite to our current analysis and goes beyond the plain and unambiguous language of the policy. Clearly, the parties to the contract did not intend for coverage under their policy to extend so far.
 {¶ 16} The crux of the issue is who gave Black permission to operate the vehicle. Courts in the past have dealt with the ambiguity created by this issue. Appellants cite case law establishing that permission may be implied from the conduct of the parties. See Frankenmuth Mut. Ins. Co. v. Selz (1983),6 Ohio St.3d 169; West v. McNamara (1953), 159 Ohio St. 187; andRice v. Jodrey (1984), 19 Ohio App.3d 183. We do not dispute the validity of these holdings. However, the facts of those cases do not square with the salient facts here. In each of the previous cases, the owner of the vehicle gave permission to another party to use the vehicle. The operator then used the vehicle beyond the scope of the permission or delegated the use of the vehicle to a third, unauthorized party. In this case, Tanner was not the owner of the vehicle. Nor was Tanner given any authority or control over the vehicle to dictate its use.
 {¶ 17} To extend coverage to Black pursuant to the case law in Frankenmuth, West and Rice, Hucle would have had to give Tanner permission to use Hucle's truck before Tanner could then authorize Black's use. Absent authority from Hucle, Tanner could not lawfully extend express or implied permission to Black. Therefore, appellants' contention that Tanner impliedly gave Black permission to use Hucle's truck is errant.
 {¶ 18} Appellants make a lengthy argument for why we should find implied permission. However, they neglect to show how or where Tanner obtained the authority from Hucle to authorize Black's use of Hucle's truck. Appellants showed only that Tanner asked Black to pick up a load of gravel, charge it to Tanner's account and deliver the gravel to the job site. "Mere directions as to where to load and deliver are not sufficient to create a question of fact as to control." Cincinnati Ins. Co. v. TheContinental Cas. Co. (Dec. 6, 1995), Hamilton App. No. C-940884, citing, Hamlin v. McAlpin Co. (1964), 175 Ohio St. 517. Absent some degree of control over the vehicle, Tanner did not have the requisite authority from Hucle to grant Black express or implied permission to use the vehicle.
 {¶ 19} Additionally, it is clear from the endorsement that, regardless of permission or whether the use of Hucle's truck was in the "business of the `Named Insured,'" Black is still ineligible for coverage under Tanner's policy with Owners. The endorsement excludes from coverage:
The owner or lessee (of whom you are a sublessee) of a hired" auto" or the owner of an "auto" you do not own or which is not registered in your name which is used in your business or any agent or employee of any such owner or lessee.
The language is clear. The truck used for hauling gravel for Tanner's business is neither owned by Tanner nor registered in his name. The owner of the truck, Hucle, is excluded from coverage by Owners. Black was an employee of Hucle Concrete and agent of Tony Hucle at the time of the accident, ergo he is also excluded.
 {¶ 20} Neither the factual circumstances of this case nor the clear and unambiguous language of the insurance contract provide coverage for Black under Tanner's policy. It is clear from the facts that Black was Hucle Concrete's employee, not Tanner's employee. Black was not using Hucle's truck for Tanner's business at the time of the accident. Black was using Hucle's truck pursuant to his employment with Hucle and Hucle's subcontract with Tanner. Tanner had no authority to give Black permission to use Hucle's truck. Black was simply not covered by Owners at the time of the accident. Accordingly, appellants' first assignment of error is overruled.
 {¶ 21} In their second assignment of error, appellants appeal the trial court's determination that Erie was entitled to set off the $100,000 paid by Progressive in partial restitution for Frances Combs' claim for emotional distress. Appellants argue Erie was not entitled to set off the payment by Progressive. The trial court ruled earlier in the case that emotional distress did not qualify as bodily injury under the terms of the insurance policy. Additionally, Erie's UM/UIM policy is only entitled to a setoff for amounts paid for bodily injury.
 {¶ 22} It is appellants' contention that the trial court erred in holding that, by not allowing the setoff, appellants would receive more than if the tortfeasors had been uninsured, which would in turn violate established public policy. R.C.3937.18(A)(2), as it was enacted on the date of the accident, states, in part, that:
* * * Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverage, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
 {¶ 23} Erie's policy language echoes that of R.C. 3937.18 to allow for setoffs. Clark v. Scarpelli (2001),91 Ohio St.3d 271, and Littrell v. Wigglesworth (2001), 91 Ohio St.3d 425
interpreted R.C. 3937.18 to prevent a policy holder from being put in a better position by being injured by an underinsured tortfeasor than by an uninsured one. We agree with this proposition. Had Black and Hucle been uninsured, appellants would have only been able to collect $100,000 from Progressive. As underinsured, if we do not allow Erie to set off Progressive's payment, appellants will receive a minimum of $200,000. Such an outcome clearly contradicts the statutory intent of R.C.3937.18(A)(2).
 {¶ 24} Appellants further protest the trial court's decision that a setoff does not violate the Due Process Clause. Appellants cite the Supreme Court of Ohio's requirement in McMullen v. OhioState Univ. Hosp. (2000), 88 Ohio St.3d 332, and Buchman v.Wayne Trace Local School Dist. Bd. Of Ed. (1995),73 Ohio St.3d 260 that setoffs must be applied to and match damages already received. It is appellants' theory that the damages they received from Progressive were for Frances Combs' claim of emotional distress, which would not be payable under the terms of Erie's insurance policy. As such, they have not received any damages for bodily injuries, which are payable under the terms of Erie's policy. Therefore, appellants surmise that allowing Erie to set off the $100,000 paid by Progressive for emotional distress against its own coverage for bodily injury would violate due process.[6]
 {¶ 25} Appellants' arguments, while creative and compelling, are erroneous in light of the applicable case law, the clear and unambiguous language of Progressive's insurance policy and the statutory language and intent of R.C. 3937.18. While the court sympathizes with the unfortunate tragedy suffered by appellants, it cannot stretch or manipulate statutory and contractual language to fashion a remedy.
 {¶ 26} Erie provides coverage in the amount of $100,000 per person and $300,000 per accident. However, the policy also allows for a reduction by "the amounts paid by or for those liable forbodily injury to anyone we protect." (Emphasis added.) The trial court previously determined, without objection from appellants, that emotional distress does not qualify as "bodily injury" for purposes of insurance coverage.[7]
 {¶ 27} It may appear that, because appellants earmarked the $100,000 paid by Progressive as damages for emotional distress, Erie would not be allowed to set off that amount against its liability coverage for her bodily injury claims. However, the trial court correctly noted that what is relevant is where the money comes from, not how the money is allocated once received by the appellants. Erie's policy allows for a reduction for payments already made under all "applicable bodily injury liability bonds." Black and Hucle were covered by Progressive's Commercial Auto Liability Policy, which provides:
Coverage A — Bodily Injury
Coverage B — Property Damage
We will pay damages, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, for which an insured is legally liable because of an accident.
Appellants are correct in their argument that it is clear from the language of Progressive's policy that liability coverage extends to more than just bodily injuries. However, their argument that coverage applies to all damages extends beyond reasonable interpretation of the plain and unambiguous language and, therefore, is erroneous. The policy clearly states that coverage is available under Progressive's policy only for bodily injury and property damage.
 {¶ 28} From the beginning, the parties stipulated that Black was liable for the damages arising from his accident with Frances Combs and her daughter. The case proceeded to bench trial on the issue of damages for four claims: bodily injury, loss of consortium, wrongful death and negligent infliction of emotional distress. Under the terms of Progressive's policy, the $100,000 policy limit was paid pursuant to the policy's bodily injury coverage (as there were no claims for property damage) for which the insured (Black and Hucle) were legally liable as a result of the accident.
 {¶ 29} Therefore, appellants' assertion that Progressive's payment was in partial satisfaction of Frances Combs' claim for negligent infliction of emotional distress is not well-taken. For all intents and purposes, Progressive's $100,000 restitution was made pursuant to its bodily injury coverage for personal injuries incurred by its insured.
 {¶ 30} Given our determination that Progressive's $100,000 payment was, in fact, made as partial restitution for Frances Combs' bodily injuries, appellants have no basis for their due process claim. Accordingly, Erie is entitled to set off Progressive's payment, and appellants' second assignment of error is overruled.
 {¶ 31} Based on the foregoing, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree, J., concurs.
Whiteside, J., concurs in judgment only.
Whiteside, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] Per their standard course of dealing, Tanner would pick up the gravel himself for larger jobs. On smaller jobs, Hucle or his employees would haul the gravel in Hucle's dump truck and charge the cost to Tanner's account.
[2] Appellee Erie provided coverage of $100,000 per person and $300,000 per accident.
[3] Appellants amended their original complaint on February 26, 2003 to include a claim against Tanner on the theory of respondeat superior. Tanner was dismissed without prejudice on January 14, 2004.
[4] Appellants and Erie filed a combined motion for summary judgment against Owners, which was denied. Erie is not appealing the judgment in favor of Owners.
[5] At best, an agency relationship existed between Black and Tanner to the extent that, prior to the accident, Black used Hucle's truck to pick up and deliver materials owned by Tanner. However, the delivery of the materials effectively ended any agency relationship that may have existed; Black was no longer acting for the "Named Insured's" business.
[6] This court notes that nowhere in the record does anyone except appellants categorize the payment from Progressive as compensation for Frances Combs' emotional suffering. Rather, it appears from the facts presented that appellants unilaterally earmarked said compensation as partial satisfaction for Frances Combs' emotional distress only after the trial court determined that emotional distress is not "bodily injury" for the purposes of coverage. The trial court rendered a judgment on June 20, 2004 that emotional distress did not qualify as bodily injury. More than four months later, on November 8, 2004, notice of partial satisfaction of the judgment by Progressive was filed with the trial court. Regardless, the label applied to the funds is irrelevant to the ultimate decision of this case.
[7] This court has further developed the issue of bodily injury and insurance coverage by consistently holding that "[n]onphysical harms such as emotional distress are not `bodily injury' as defined by R.C. 3937.18 and therefore not covered under the Erie policy." Erie Ins. Co. v. Favor (1998),129 Ohio App.3d 644, at 649; see, also, Mains v. State Auto Mut. Ins.Co. (1997), 120 Ohio App.3d 534; Bernard v. Cordle (1996),116 Ohio App.3d 116.